USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/1/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA            :

     - against -                    :

SHARIF SUMNER,                      :

             Defendant.    :

- - - - - - - - - - - - - - - - - -x

**MEMORANDUM DECISION**

08 Cr. 824 (DC)
10 Civ. 2932 (DC)

**APPEARANCES:**         PREET BHARARA, ESQ.
United States Attorney for the
Southern District of New York
    By:  Randall W. Jackson, Esq.
         Assistant United States Attorney
One Saint Andrew's Plaza
New York, New York  10007

SHARIF SUMNER
Defendant Pro Se
Federal Correctional Institution, McKean
P.O. Box 8000
Bradford, Pennsylvania  16701

**CHIN, Circuit Judge.**

Defendant Sharif Sumner pled guilty on March 6, 2009 to one count of conspiracy to distribute and possess with intent to distribute heroin and one count of conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846. On June 8, 2009, I sentenced him to a term of imprisonment of 108 months on each count, to run concurrently. Now proceeding pro se, Sumner moves pursuant to 28 U.S.C. § 2255

to vacate, set aside, or correct his sentence.  Sumner makes the

following claims:  (1) he was actually innocent of both

conspiracies; (2) his sentence was excessive; and (3) he received

ineffective assistance of counsel.  For the reasons set forth

below, his motion is denied.

**BACKGROUND**

**A.   The Facts**

In March 2008, a confidential informant (the "CI") told

an agent of the U.S. Immigrations and Customs Enforcement ("ICE")

that Sumner had approached the CI, offering to sell him 500 grams

of heroin.  (PSR ¶ 9).[1]  During a series of recorded phone calls,

Sumner later agreed to sell 1,000 grams of heroin to the CI for

$60,000.  (Id. ¶ 10).  ICE monitored a meeting between the two on

April 14, 2008, when Sumner provided the CI with a 12.8-gram

sample of heroin.  (Id. ¶ 11).  On the appointed delivery date,

April 23, 2008, Sumner met the CI but relayed that his supplier

---

[1]      References are as follows:  "Plea Agmt." for the plea
agreement dated January 14, 2008; "Plea Tr." for the transcript
of Sumner's plea allocution; "PSR" for the Presentence Report
dated May 29, 2009; "Sen. Tr." for the transcript of Sumner's
sentencing; "Pet. Mem." for Sumner's memorandum in support of his
§ 2255 motion, dated March 4, 2010; "Gov't Resp." for the
government's response to Sumner's habeas motion, dated August 2,
2010; "Pet. Resp." for Sumner's response to the government's
response, dated September 1, 2010.

had only 750 grams of heroin remaining. (Sen. Tr. 12-13; PSR ¶ 12).[2] After renegotiating the price, Sumner drove away to retrieve the heroin, followed by ICE agents in unmarked vehicles. (PSR ¶ 12). He drove erratically before abandoning his vehicle and walking away. In a May 1, 2008 phone conversation with the CI, Sumner remarked that he had noticed some "funny stuff" and had decided to abandon the transaction. (Id. ¶ 13). The transaction was never completed.

Later that summer, Sumner agreed to buy one kilogram of cocaine from the CI. (Id. ¶ 14). By the terms of their agreement, Sumner would pay $5,000 upon receiving the drugs and $20,000 more after the cocaine had been sold. (Id.). ICE agents provided the CI with a black duffel bag containing "sham" cocaine. (Id. ¶ 15). On August 26, 2008, Sumner and the CI met in Manhattan; after apologizing for being "short" on the cash, Sumner exchanged $3,500 for the bag of "sham" cocaine. (Id. ¶¶ 15-16). ICE agents approached and arrested Sumner once he returned to his vehicle. (Id. ¶ 16).

---

[2]    Although the Presentence Report ("PSR") stated that "[Sumner] only had 750 grams of heroin left" (PSR ¶ 12), Sumner's counsel challenged that portion of the report (Sen. Tr. 12). As the government did not object, I modified the challenged portion to read that Sumner's supplier had only 750 grams of heroin remaining. (Id. at 12-13).

Sumner waived his <u>Miranda</u> rights and, in post-arrest statements, identified two individuals peripherally involved in the cocaine transactions. (<u>Id.</u> ¶ 17). According to Sumner, "Boogie" and "Man Man" had provided some of the $3,500 used to buy the "sham" cocaine. (<u>Id.</u>). In addition, Sumner stated that he had planned to deliver the cocaine to them for re-sale in smaller quantities. (<u>Id.</u>). Finally, he also indicated that his relationship with his former heroin supplier had ended approximately two months earlier. (<u>Id.</u>).

## B. Prior Proceedings

On March 6, 2009, Sumner was charged with one count of conspiracy to distribute and possess with intent to distribute heroin and one count of conspiracy to distribute and possess with intent to distribute cocaine. (PSR ¶¶ 2-3). He signed a plea agreement, which stated that he "decided to plead guilty because he is in fact guilty." (Plea Agmt. 5, 7; <u>see also</u> Plea Tr. 12-16). In his allocution before Magistrate Judge Gabriel W. Gorenstein, he admitted to having discussed distributing more than 100 grams of heroin and more than 500 grams of cocaine (Plea Tr. 12-13), in violation of 21 U.S.C. §§ 846, 841(b)(1)(B).[3]

---

[3]     The relevant provisions in § 841 establishes a mandatory minimum sentence of five years' imprisonment for

The PSR grouped the charges pursuant to § 3D1.1(a) of the Guidelines Manual, yielding an aggregate drug equivalency of 950 kilograms of marihuana. (PSR ¶¶ 22-23). Sumner's base offense level was 30, but he received a three-level reduction for his timely plea and allocution. (Id. ¶¶ 23, 29). As a result, based on an offense level of 27 and a criminal history category of IV, the PSR calculated a Guidelines range of 100 to 125 months' imprisonment. (Id. ¶ 6(d)-(f)).

Sumner appeared before me for sentencing on June 8, 2009. I asked him to clarify whether a co-conspirator besides the CI (who was working for the government) had been involved in the crimes with which Sumner had been charged. (Sen. Tr. 3-11). Sumner affirmed that a third party was involved in the heroin sale:

> THE COURT: So you had a discussion with that other person and you agreed that he was going to give you heroin and then you were going to sell that heroin to [the CI]?
> THE DEFENDANT: Yes, sir.
> THE COURT: That's true?
> THE DEFENDANT: Yes, sir.

---

distributing or possessing with intent to distribute "100 grams or more of . . . heroin" and "500 grams or more of . . . cocaine." 21 U.S.C. § 841(b)(1)(B)(i)-(ii). Section 846, the conspiracy statute, incorporates § 841 by reference. Id. § 846.

(Id. at 6; see also id. at 5).  In addition, I asked Sumner about how he financed his cocaine purchase:

> THE COURT:  Where did you get that money
> from?
> THE DEFENDANT:  Partial money was mine and
> partial money was from other people.
> THE COURT:  And those other people gave it to
> you knowing that you were going to use the
> money to buy cocaine?
> THE DEFENDANT:  Right.

(Id. at 11).  The government also noted that the quantity of cocaine involved exceeded amounts attributable to personal use. (Id. at 10).  I was satisfied with Sumner's answers to my questions, and I adopted the PSR's findings of fact as my own (id. at 13-14), accepted Sumner's plea (id. at 11), and sentenced him to a term of 108 months' imprisonment on each count, to run concurrently (id. at 24).

In his plea agreement, Sumner waived his right to appeal his sentence.  (Plea Agmt. 5).  In particular, he agreed that he "[would] not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or 2241, any sentence within or below the Stipulated Guidelines Range set forth above (100-125 months' imprisonment)."  (Id.).  Sumner specifically acknowledged during the plea allocution that he would not appeal a Guidelines sentence:

> THE COURT:  Do you understand that under the
> terms of this agreement, if you get a
> sentence of 125 months or less, you are
> giving up your right to challenge that
> sentence --
> THE DEFENDANT:  Yeah.
> THE COURT:  -- either through an appeal to
> the Court of Appeals or through an
> application to the trial judge such as a writ
> of habeas corpus?  Do you understand that?
> THE DEFENDANT:  Yes, sir.

(Plea Tr. 11).

Sumner did not file a direct appeal to challenge the
adequacy of his sentence or his underlying conviction.  He timely
filed this petition pursuant to 28 U.S.C. § 2255 to vacate, set
aside, or correct his sentence.

### DISCUSSION

Sumner's motion is denied.  First, he waived his right
to challenge his conviction and sentence, whether by a motion
under 28 U.S.C. § 2255 or otherwise.  Second, even assuming that
Sumner is not precluded from making this challenge, the motion
fails on the merits.

### A.   Waiver of Right to Appeal

The government argues that petitioner's motion should
be denied because he waived his right to challenge his
conviction.  (Govt' Resp. 8-11).  I agree.

### 1.   Applicable Law

-7-

Parties to a plea agreement may waive their right to appeal. See Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002). So long as the waiver was made knowingly and voluntarily, the Second Circuit holds such waivers enforceable. United States v. Djelevic, 161 F.3d 104, 106-07 (2d Cir. 1998). To find otherwise would "render the plea bargaining process and the resulting agreement meaningless." United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993).

Such waivers notwithstanding, a petitioner may challenge the "constitutionality of the process by which he waived those rights." United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001); see also Frederick, 308 F.3d at 195-96. For example, this Circuit deems waivers secured without the benefit of effective counsel unenforceable. Djelevic, 161 F.3d at 107; see also Hernandez, 242 F.3d at 114 (explaining that "'the very product of the alleged ineffectiveness' cannot fairly be used to bar a claim of ineffective assistance of counsel" (quoting Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1998))).

## 2. Application

According to the terms of his plea agreement, Sumner agreed not to appeal "any sentence within or below" the Guidelines range, 100-125 months' imprisonment. (Plea Agmt. 5).

-8-

I sentenced him to 108 months on each count, within the stipulated range. Sumner's motion is denied because he waived his right to appeal or otherwise challenge a Guidelines sentence, and the record establishes that his waiver was knowing, voluntary, and intelligent. First, Judge Gorenstein specifically asked Sumner whether he understood that he was giving up his right to appeal if he received a Guidelines sentence; Sumner responded in the affirmative. (Plea Tr. 10). Second, he confirmed that he had discussed the plea agreement with his attorney and that he had not been induced or forced to enter into the plea agreement. (Id. at 9-10). Third, he confirmed that he was satisfied with his attorney's representation. (Id. at 5). Consequently, the plea agreement is valid, as is its waiver.

Sumner has not pointed to any facts that would suggest otherwise. Thus, he is precluded from challenging his conviction on this ground. Moreover, although Sumner does argue that he received ineffective assistance of counsel, this argument fails for the reasons set forth below.

B.  **Merits**

Generally, a defendant forfeits those claims that were not first asserted on direct review. United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998). In limited circumstances, however,

a defendant may overcome such an omission. For example, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review," he may raise it in habeas review if he establishes "that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted); see also Rosario v. United States, 164 F.3d 729, 732 (2d Cir. 1998) (citing Bousley). Furthermore, allegations of ineffective assistance of counsel may also overcome a procedural bar. Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007) (citing Massaro v. United States, 538 U.S. 500, 505-06 (2003)).

Sumner never filed a direct appeal. Instead, he submitted this § 2255 petition, through which he advances three substantive claims: (1) he was actually innocent, (2) his sentence was excessive, and (3) he received ineffective assistance of counsel. Of those claims, the second argument is procedurally barred. Nevertheless, even assuming that Sumner did not waive his right to appeal and his claims were not procedurally barred, his motion must be denied on the merits. His three substantive claims are addressed in turn below.

## 1. Actual Innocence

Sumner contends that his allocution never established his participation in a conspiracy. His argument takes two forms:

-10-

First, he never entered into an agreement with anyone besides an
informant working with the government. Second, as to the heroin
conviction, his admission regarding quantity referred only to the
aggravated offense quantity. Based on a review of the record, I
find his actual innocence claim fails because (1) sufficient
evidence established his agreement with third parties and (2) his
admission to the aggravated offense quantity was a sufficient
basis for the conviction.

### a.  Applicable Law

The essence of a conspiracy is "the agreement of two or
more persons to commit a criminal act." United States v. Gore,
154 F.3d 34, 40 (2d Cir. 1998). In this Circuit, "the evidence
must at least demonstrate the existence of the unknown co-
conspirators and their complicity." Id. at 41. An individual
cannot conspire with an undercover government agent alone; a
third party must also participate in the joint venture. See
United States v. Goldberg, 756 F.2d 949, 958 (2d Cir. 1985);
United States v. Barnes, 604 F.2d 121, 161 (2d Cir. 1979).

Although the buyer-seller relationship does not itself
establish a conspiracy, United States v. Rojas, 617 F.3d 669, 674
(2d Cir. 2010), circumstances differ when large quantities are

involved.  This Circuit has "frequently noted that 'one who deals in large quantities of narcotics may be presumed to know that he is part of a venture which extends beyond his individual participation.'"  United States v. Murray, 618 F.2d 892, 902 (2d Cir. 1980) (quoting United States v. Magano, 543 F.2d 431, 433-34 (2d Cir. 1976)).  Cf. United States v. Medina, 944 F.2d 60, 65 (2d Cir. 1991) (buyer-seller relationship involving small quantities of drugs is insufficient to establish a conspiracy).

In conspiracies that reference the aggravated offense provisions in 21 U.S.C. § 841(b)(1), drug quantity is an element of the offense charged.  United States v. Thomas, 274 F.3d 655, 663 (2d Cir. 2001) (en banc).  Thus, that quantity "must be pleaded and proved to a jury or admitted by a defendant to support any conviction on an aggravated drug offense."  United States v. Gonzalez, 420 F.3d 111, 133-34 (2d Cir. 2005).

Following a conviction, the bar for succeeding on a claim of legal innocence is quite high.  According to the Supreme Court, the petitioner must prove that, given the new evidence, "'it is more likely than not that no reasonable juror would have convicted him.'"  Bousely, 523 U.S. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)); see also DeJesus v. United States, 161 F.3d 99, 103 (2d Cir. 1998).  This standard rests on

-12-

the petitioner's "factual innocence, not mere legal

insufficiency." Bousely, 523 U.S. at 623. A variety of factors

offer indicia of a defendant's guilt. For example, admissions of

guilt in a plea agreement, statements made at a plea colloquy,

and a pro forma portion of the plea stating that a defendant was

pleading guilty "because he [was] in fact guilty" have all been

accepted as evidence of culpability. See Colon v. United States,

No. 07-civ-2172, 2010 WL 1644260, *7 (S.D.N.Y. Apr. 21, 2010).

### b.  Application

#### i.  Never Conspired with Individuals Unaffiliated with the Government

Despite his claim to the contrary, the record

unequivocally shows that Sumner was working with others who were

not affiliated with the government. Regarding the heroin sale,

on numerous occasions, Sumner indicated that someone other than

the CI was involved. First, he admitted as much at his plea

allocution when he stated, "I discussed with another person to

distribute more than 100 grams of heroin." (Plea Tr. 12).

Second, in follow-up questioning at his sentencing, Sumner also

conceded that a supplier agreed to provide him with heroin, with the understanding that Sumner would, in turn, sell it to the CI. (Sen. Tr. 6). Third, the plea agreement he signed acknowledged guilt for "conspiring to distribute and possess with intent to distribute 100 grams and more of heroin" and stated that he pled guilty "because he [was] in fact guilty." (Plea Agmt. 1, 5). Fourth, he never objected to the PSR's findings of a conspiracy, despite receiving an opportunity to do so. (Sen. Tr. 12-13; PSR ¶¶ 2, 18). Fifth, the specific quantity of heroin involved, 750 grams (Plea Agmt. 2), indicated that personal use was extremely unlikely. Hence, the record established that Sumner knew that the venture extended beyond his own participation.

The record is equally clear about the cocaine purchase. First, Sumner admitted during his plea allocution that he "agreed with another person to distribute more than 500 grams of cocaine." (Plea Tr. 13). Second, he signed a plea agreement, which acknowledged that he "conspir[ed] to distribute and possess with intent to distribute 500 grams and more of cocaine." (Plea Agmt. 1). Third, when I questioned Sumner about how he financed the cocaine purchase, he replied that "[p]artial money was mine and partial money was from other people," who knew he would be using their money to buy cocaine. (Sen. Tr. 11; see also PSR ¶

-14-

17). Fourth, the terms of Sumner's transaction with the CI --
payment of $5,000 upon receipt of the drugs and payment of the
balance ($20,000) after the drugs had been sold -- indicated that
Sumner and his co-investors intended to distribute the cocaine.
(PSR ¶ 14). Fifth, Sumner had planned to deliver the purchased
cocaine to "Boogie" and "Man Man," neither of whom were
government agents. (PSR ¶ 17). Sixth, Sumner never objected to
any PSR findings pertaining to the cocaine conspiracy. (PSR ¶¶
3, 18). And seventh, the quantity of cocaine involved ruled out
personal use (Sen. Tr. 10), excluding Sumner from the ambit of
the buyer-seller rule.

Based on the record, which repeatedly demonstrated that
Sumner conspired with individuals other than the CI, I accepted
his guilty plea. (Sen. Tr. 11). Other than his present
conclusory assertions, Sumner offers no evidence that would
support his claim of innocence. These assertions, without more,
cannot overcome Bousely's high bar: "factual innocence." Thus,
this argument must fail on the merits.

### ii. **Never Admitted Sentencing Quantity**

Sumner's second argument applies only to his heroin
conviction: he maintains that he never acknowledged the specific

quantity of heroin used to calculate his base offense level.[4] (Pet. Resp. 10-11). As a result, he argues that his allocution was insufficient to establish a conspiracy because such information must be either submitted to a jury or admitted by the defendant. This reflects an erroneous understanding of the law.

Although neither I nor Judge Gorenstein questioned Sumner regarding the specific quantity of heroin involved in his transaction, the law only requires Sumner to admit to quantity if it is an element of the crime charged. The aggravated offense quantity referenced in Sumner's conspiracy charge -- 100 grams or more of heroin -- was the only quantity that he needed to concede. Sumner made the necessary admission, stating that he had intended to "distribute more than 100 grams of heroin." (Plea Tr. 12). Thus, even if he never admitted to the 750 gram-quantity considered at sentencing, for the purpose of this conviction, his admission was sufficient to support the conviction. The 750-gram amount could be determined by the Court on the record, without a finding by the jury. See, e.g., United States v. Burden, 600 F.3d 204, 227-28 (2d Cir. 2010) ("'Judicial authority to find facts relevant to sentencing by a preponderance

---

[4]    Sumner explicitly stated that he purchased "a kilogram of what [he believed] was cocaine." (Plea Tr. 13).

of the evidence survives Booker.'" (quoting United States v.

Garcia, 413 F.3d 201, 220 n.15 (2d Cir. 2005))).

>    **2.    Excessive Sentence Based on Allegedly Erroneous Base
>            Offense Level Calculation**

By relying on the application note of the relevant

Guideline, Sumner claims that he was not "reasonably capable" of

delivering 750 grams of heroin, the quantity used by the PSR to

calculate his base offense level and the associated Guideline

range.  (Pet. Mem. 4).  He suggests that a sentencing range

calculated using either the 12.8-gram sample or the 500 grams he

initially agreed to sell would have been more appropriate.  (Pet.

Mem. 6).  Although Sumner waived his right to challenge his

sentence, this argument also fails on the merits.

>    **a.    Applicable Law**

Generally, the Guidelines Manual calculates the base

offense level using the "agreed-upon quantity."  Id.; see also

United States v. Barnes, 244 F.3d 172, 177 (1st Cir. 2001).  When

calculating the base offense level for consummated transactions,

however, "the amount [of drugs] delivered" should be used if it

"more accurately reflects the scale of the offense."  U.S.

Sentencing Guidelines Manual § 2D1.1 cmt. n.12 (2008).

Furthermore, if the defendant demonstrates that he never intended

-17-

to complete the transaction or "was not reasonably capable of providing" the agreed-upon quantity, the offense level determination should exclude this challenged amount. U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.12; see also United States v. Desimone, 119 F.3d 217, 228 (2d Cir. 1997).

The Second Circuit applies a burden-shifting rule when a defendant challenges intent or capability under § 2D1.1. See United States v. Dallas, 229 F.3d 105, 109 (2d Cir. 2000). Although the government must initially demonstrate both the defendant's intent and capability, id., a defendant may rebut that showing if he "'produce[s] evidence tending to establish lack of intent or inability to deliver the alleged quantity of drugs,'" id. (quoting United States v. Hazut, 140 F.3d 187, 192 (2d Cir. 1998)). Conclusory statements or counsel's arguments are insufficient to satisfy this burden of production. Id. If the defendant meets his burden, the ultimate burden of proof lies with the government. Id.

When a defendant challenges capability, the sentencing court must make specific findings of fact as to the defendant's ability to produce the agreed-upon amount of drugs. Desimone, 119 F.3d at 228. The court should consider the initial negotiations; discussions about "logistical concerns" such as

-18-

price, quantity, and delivery; and any arrangements for financing

or delivery made among the co-conspirators.  Id. at 229 (citing

United States v. Hendrickson, 26 F.3d 321, 338 (1994) (questioned

on other grounds)).  Adopting the PSR's findings satisfies the

requirement that the findings be sufficient to permit appellate

review.  Id. at 228.

### b.  **Application**

As support for his claim that he was not "reasonably

capable" of producing 750 grams of heroin, Sumner states that his

relationship with his supplier had ended two months before his

arrest.  (Pet. Mem. 4-5; PSR ¶ 17).  He argues that, had I made a

finding of fact regarding capability, I would have unearthed this

purportedly vindicatory information.

I note at the outset that Sumner did not produce any

evidence to support his claim, as the Second Circuit's burden-

shifting test requires.  On the contrary, certain information in

this respect appeared in the PSR (PSR ¶ 17), which I reviewed

thoroughly before I sentenced Sumner.  The PSR indicated that

Sumner met the CI on April 23, 2008 for the purpose of

consummating the heroin sale.  (PSR ¶ 12).  After his arrest four

months later, on August 26, 2008 (id. ¶ 16), Sumner revealed that

his relationship with his heroin supplier had ended around two

-19-

months prior (id. ¶ 17), in June 2008.  This turn of events,
however, had no bearing on his ability to provide the agreed-upon
quantity of heroin in April 2008, when he intended to make the
sale.

I adopted the findings of the PSR as my findings of
fact.  (Sen. Tr. 13-14).  In this Circuit, that satisfies my
obligation to make findings of fact sufficient for appellate
review.  Sumner has not produced any evidence that might suggest
that he was incapable of delivering 750 grams of heroin.  Absent
such a showing, Sumner cannot meet the burden of production this
Circuit requires.  To the contrary, recorded phone calls show
that he agreed to sell 1,000 grams of heroin to the CI and then
later claimed he could produce only 750 grams.[5]  The PSR rightly
considered the 750-gram amount in its base offense level
calculation, and the associated sentencing range was reasonable.

_____

[5]     I reject Sumner's proposed alternative quantities.
Characterizing the 12.8-gram sample as an "amount delivered" in a
completed transaction is wrong.  This was not a situation where,
as the Guidelines Manual describes, "no further delivery" was
contemplated by the parties; in fact, both Sumner and the CI
anticipated a significantly larger transaction would follow.  See
U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.12; accord
United States v. Santiago, 31 Fed. App'x 768, 769 (2d Cir. 2002).
Furthermore, whether I sentenced Sumner on the basis of 750 or
500 grams of heroin (plus the undisputed 1000 grams of cocaine),
the base offense level of 30 would not change.

In addition, drug quantity was just one of many concerns at sentencing. I noted that this was Sumner's "fourth serious conviction," a fact I found "troubling." (Sen. Tr. 24). Two of those prior convictions included violence and guns, further cause for concern. (Id.; see also PSR ¶¶ 34-48). I also remarked that this final conviction was really two separate transactions. (Sen. Tr. 24). Given his criminal history, neither the range nor the sentence was excessive.

### 3. Ineffective Assistance of Counsel

Sumner asserts in this petition that he was prejudiced by his counsel's ineffective assistance. Sumner contends that his lawyer's representation was ineffective because he never made the following arguments: (1) Sumner was actually innocent of the conspiracies charged, and (2) the PSR's base offense level calculation applied a drug quantity Sumner was not reasonably capable of providing, which, in turn, informed my sentencing decision. For the reasons outlined below, I reject this claim.

#### a. Applicable Law

Allegations of ineffective assistance are judged by the two-prong test established by the Supreme Court in Strickland v. Washington. 466 U.S. 668, 687-96 (1984); see also Gueits v. Kirkpatrick, 612 F.3d 118, 120-22 (2d Cir. 2010). Strickland's

-21-

first prong asks whether the "representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. Due to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," representation must generally lie well outside the norm to be constitutionally deficient. Id. at 689; see also Knowles v. Mirzayance, 129 S. Ct. 1411, 1420 (2009). Courts will respect an attorney's reasonable and "strategic choices," see Strickland, 466 U.S. at 690; United States v. Vegas, 27 F.3d 773, 777 (2d Cir. 1994), which may be informed by a client's statements and actions. See Strickland, 466 U.S. at 691.

Even if the reasonableness prong is met, a claim cannot succeed unless defendant suffered actual prejudice resulting from counsel's deficient performance. Id. at 692. A performance is deficient when there is a "reasonable probability" that the outcome of the proceeding would have differed had counsel provided adequate representation. Id. at 694. Combined, these criteria impose a high bar for proving legal assistance ineffective.

b. **Application**

Sumner first finds fault with counsel's performance because he chose not to argue that Sumner was actually innocent.

-22-

This was no lapse; various documented events, as described
earlier -- in addition to Sumner's statements -- affirm the
reasonableness of counsel's judgment.  Counsel was entitled to
rely on Sumner's repeated admissions of guilt.

          Sumner then argues that his attorney never objected to
the quantity of heroin used to calculate his base offense level,
thereby rendering ineffective assistance.  For sentencing
purposes, the PSR determined the amount of heroin involved in
Sumner's attempted sale was 750 grams.  (PSR ¶ 23).  Until now,
Sumner never disputed that quantity, and, in light of this recent
challenge, I have affirmed that Sumner was "reasonably capable"
of producing the 750-gram amount.  Had there been some glaring
mistake in the PSR, counsel's "failure to object to the
calculation error [would be] a clear lapse in representation."
Johnson v. United States, 313 F.3d 815, 818 (2d Cir. 2002) (per
curiam).  No such error was evident here, and counsel did not act
unreasonably when he chose not to object to the drug quantity
determination.

          Beyond Sumner's specific objections, counsel's actions
viewed generally are not suggestive of ineffective counsel.  His
lawyer discussed the charges, the plea agreement, and the PSR
with Sumner.  (Plea Tr. 5-6, 9-10; Sen. Tr. 11-12).  He also

secured benefits for his client in exchange for the guilty plea.[6]
Coupled with the overwhelming evidence noted above, I conclude
that advising Sumner to plead guilty was a "strategic choice"
that fell within the spectrum of reasonableness.[7]

## CONCLUSION

For the reasons set forth above, Sumner has failed to
demonstrate any basis for relief under 28 U.S.C. § 2255. The
motion is therefore denied. Because Sumner has not made a
substantial showing of the denial of a constitutional right, I
decline to issue a certificate of appealability. See 28 U.S.C. §
2255 (1996) (as amended by the Antiterrorism and Effective Death
Penalty Act). I certify pursuant to 28 U.S.C. § 1915(a)(3) that

---

[6]     Sumner received a three-point offense level reduction
and a promise that the Government would dismiss any open counts,
forgo any appeals if he were sentenced within the suggested
Guidelines range, and refrain from prosecuting him for
participation in other conspiracies to distribute controlled
substances from March to August 2008.  (Plea Agmt. 2).

[7]     Because Sumner's counsel acted reasonably, it is
unnecessary to consider the second prong of the Strickland test.
Strickland, 466 U.S. at 697 ("[T]here is no reason for a court
deciding an ineffective assistance claim . . . to address both
components of the inquiry if the defendant makes an insufficient
showing on one.").

any appeal taken from this decision and order would not be taken in good faith.

        SO ORDERED.

Dated:     New York, New York
           December 1, 2010

                                        DENNY CHIN
                                        United States Circuit Judge